No. 126,090

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CHARLES RICHARD BOLINGER,
*Appellee*.


SYLLABUS BY THE COURT


1.

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible.


2.

Criminal statutes are strictly construed in favor of the accused. This rule is subordinate to the rule that the interpretation of a statute must be reasonable and sensible to effect the legislative design and intent of the law.


3.

The rule of lenity arises only when there is any reasonable doubt of the statute's meaning.


4.

The tolling provisions listed in K.S.A. 1998 Supp. 21-3106(8)(f) do not indefinitely extend the statute of limitations for prosecution. Rather, they provide that certain time periods are excluded from the count. When the statute of limitations contains

an exception or condition that tolls its operation, courts deduct a specified period of time when there is substantial competent evidence that two or more of the statutory factors are present.

5.

Under K.S.A. 1998 Supp. 21-3106(8)(f)(ii), the statute of limitations begins to run when the victim becomes able to determine the criminal nature of the conduct.

Appeal from Jefferson District Court; CHRISTOPHER ETZEL, judge. Oral argument held March 5, 2024. Opinion filed April 12, 2024. Affirmed.

*Ethan Zipf-Sigler*, assistant solicitor general, *Joshua A. Ney*, county attorney, *Ryan A. Kriegshauser*, assistant county attorney, *Cameron S. Bernard*, of Goodell, Stratton, Edmonds & Palmer, LLP, of Topeka, and *Kris W. Kobach*, attorney general, for appellant.

*Tricia A. Bath* and *Thomas J. Bath, Jr.*, of Bath & Edmonds, P.A., of Leawood, for appellee.

Before GREEN, P.J., HILL and CLINE, JJ.

HILL, J.:  A district court dismissed two sex crime charges against Charles Bolinger based on the statute of limitations. The State appeals their dismissal. In 2022, the State charged Bolinger with rape and aggravated criminal sodomy of two young girls based on acts committed in the 1990s. The issues on appeal center on the interpretation of the tolling provision of the statute of limitations in K.S.A. 1998 Supp. 21-3106(8)(f). The State challenges both the trial court's interpretation of the statute and the court's application of its interpretation of the statute to the unique facts of the two prosecutions.

*Charges are filed for acts alleged to have occurred in 1997 and 1999.*

The State charged Bolinger on February 3, 2022, with rape of M.H. occurring between August 1998 and March 1999.

At the preliminary hearing, M.H. testified she was born in 1987. For about six months between 1998 and 1999, when she was 11, she lived with her aunt who was married to Bolinger. During that time, Bolinger digitally penetrated her vagina while reading her stories at night. It made her uncomfortable at first, but after a while she just thought it was normal behavior. She grew up believing such sexual touching was normal. When she got pregnant at age 17, she talked to a psychologist and realized what Bolinger did to her was a crime. She did not report Bolinger at that time because of her immigration status, language barrier, and her parents' attitude. Nobody had threatened her.

At the same time, the State charged Bolinger with aggravated criminal sodomy of K.C. occurring between February 1997 and December 1999.

K.C. testified she was born in 1994. When she was three years old, Bolinger was her mom's boyfriend. After a diaper change, her mom left her alone with Bolinger. Bolinger then picked up K.C. and licked her vagina. Her mom came back in the room and asked if he had touched her. K.C. pointed "down there." Her mom made Bolinger apologize, and it never happened again. "[P]retty soon after" the assault, her mom and Bolinger got married. They were married in June 1997. K.C. remembered being "very upset, crying, throwing a fit" at the wedding because "she chose to marry him, even after my assault."

K.C. testified that, at the time of the assault, she did not know the action was a crime. She knew what Bolinger did was wrong. But she first realized it was a crime "last

3

year," when she was 27. She was "not sure how to answer" why she only made this realization last year. She was meditating and just "had this . . . realization." When she was a child, she kept bringing the assault up to her mom until she was five years old. Her mom told her to stop bringing it up or her mom would not take care of her anymore. Her mom told her she should be ashamed about it. Her mom told her not to tell anyone what happened. Because of grief and shame, she testified she repressed the memory from age 5 until age 27. She also testified, "I would occasionally think about it growing up, but I would be so disgusted with myself that I just wouldn't let myself think about it."

When she was asked on cross-examination about how she realized it was a crime, K.C. testified she did research and talked to people. She "researched like the Kansas jurisdictions and . . . like how long. . . . the statutes." When asked if she meant she researched the statute of limitations, she said she "researched everything" and went to the police and learned "that there was, like, certain time frames." When asked again why her research in 2021 told her it was a crime, her answer was nonresponsive. She said, "Just because my family wasn't going to do anything about it."

*The court ruled that the prosecutions were time barred.*

Bolinger moved to dismiss, contending the prosecutions were time barred by the statute of limitations in K.S.A. 1998 Supp. 21-3106(8)(f). Under K.S.A. 1998 Supp. 21-3106(4), prosecutions for rape and aggravated criminal sodomy must commence within five years of the crime's commission, unless tolled by subsection (8). Subsection (8)(f) lists four factors and specifies that if any two are present, the five-year statute of limitations is tolled. There is no dispute here that one of these four factors, set forth in (i), was present since each of the victims was under 15 years of age at the time of the alleged crimes. K.S.A. 1998 Supp. 21-3106(8)(f)(i). And no one argues the two factors listed in (iii) and (iv) apply. Thus, the existence of factor (ii), "the victim was of such age or

4

intelligence that the victim was unable to determine that the acts constituted a crime," is the heart of this appeal. K.S.A. 1998 Supp. 21-3106(8)(f)(ii).

Since the statute is tolled so long as two or more of the listed factors are present, Bolinger argued at the motion hearing that the five-year statute of limitations starts to run once two of the factors listed in subsection (8)(f) are no longer present. Thus, according to Bolinger, the statute should be read as follows: "The period within which a prosecution must be commenced shall not include any period in which . . . (ii) the victim was of such age or intelligence that the victim was unable to determine that the acts constituted a crime." K.S.A. 1998 Supp. 21-3106(8). M.F. testified she realized the incident was a crime at age 17. She turned 17 in 2004. Thus, the statute of limitations on the alleged crime against M.F. started to run in 2004 and expired in 2009. As for K.C., Bolinger argued there was not substantial competent evidence to believe the presence of (8)(f)(ii) because K.C.'s testimony was conflicting.

The State argued the statute of limitations does not start once the victim becomes of such age or intelligence to realize the conduct was a crime. Using a descriptive word not found in the statute—static—the State contended the statute had been tolled indefinitely. In the State's view, because of the Legislature's use of the word "was" instead of "is," the two factors in (f)(i) and (f)(ii) are static. The State contends that if the circumstances set out in (f)(i) and (f)(ii) were true at the time of the crime, the statute of limitations is tolled indefinitely. In other words, there still is substantial competent evidence to believe the victim was a child under 15 years of age and the victim was of such age or intelligence that the victim was unable to determine that the acts constituted a crime at the time of the crime.

The district court adopted Bolinger's interpretation and dismissed the charges. Using the preliminary hearing testimony, the trial court found M.H.'s rape occurred when she was 11 years old. At that time she did not realize the encounter was a crime. Thus,

5

with the presence of both (f)(i) and (f)(ii), the statute of limitations was tolled. In 2004, at age 17, M.H. realized what Bolinger did to her was a crime. Therefore, the statute of limitations began to run in 2004 and then expired five years later in 2009. These charges were untimely filed in 2022.

Turning then to the charges involving the victim, K.C., the court found K.C. was three years old at the time of the aggravated criminal sodomy. Subsection (f)(i) was met. While K.C. testified she did not realize the conduct was a crime until last year, when she was 27 years old, she struggled to answer questions on cross-examination.

She remembered being upset and angry with her mother when she was less than three-and-a-half years old about what Bolinger had done to her. And she would occasionally think about the incident while growing up. The court concluded there was not substantial competent evidence to establish that K.C. only realized at age 27 that the act was a crime. Because two of the circumstances in (8)(f) were not shown, the statute of limitations could not be tolled.

To us, the State argues the Legislature intended both subsections of the statute—K.S.A. 1998 Supp. 21-3106(8)(f)(i) and (ii)—to be true at the time the crime occurred. If they were true at the time of the crime, then the statute of limitations is tolled until the victim turns 28 years old.

The State claims the Legislature's use of the term "was" instead of "is" in the 21-3106(8)(f) factors designate static and fixed periods of time. The State contrasts the tolling provisions of 21-3106(8)(a)-(e) that use the term "is." The State claims "to say that the statute of limitations begins to run when the victim becomes able to determine the criminal nature of the conduct is to rewrite the statute." The State claims the statute cannot be read so that (8)(f)(i) is static while (8)(f)(ii) is dynamic.

6

For its second issue, the State contends the trial court misapplied its own interpretation of the statute to the charge related to K.C. The State posits that the trial court did not believe K.C.'s testimony and argues that the trial court should not have made such a credibility determination in deciding this issue. The trial court should have weighed the evidence in the light most favorable to the State. Only a jury could make such a credibility determination. Without evidence of any other specific date that K.C. realized the conduct was a crime, the trial court should have given effect to K.C.'s testimony that it was when she was 27. K.C. was 13 years old in 2013 when the statute of limitations was extended indefinitely. We note there was a computational error in the argument; K.C. was, in fact, 19 years old in 2013. See K.S.A. 2013 Supp. 21-5107(a).

*Some history of the law of limitations is helpful here.*

Prior to 1994, there were only five time periods during which the statute of limitations was tolled—any period in which:

> "(a) The accused is absent from the state;
>
> "(b) the accused is concealed within the state so that process cannot be served . . . ;
>
> "(c) the fact of the crime is concealed;
>
> "(d) a prosecution is pending against the defendant for the same conduct . . . ; or
>
> "(e) an administrative agency is restrained by court order from investigating or otherwise proceeding." K.S.A. 1993 Supp. 21-3106(6).

Prosecutors in child sex crime cases tried to argue that threats made to keep child victims from reporting the crime constituted concealment to toll the statute of limitations. But our Supreme Court rejected these claims, holding: "To constitute concealment of the fact of a crime sufficient to toll the statute of limitations, there must be a positive act done by or on behalf of the accused calculated to prevent discovery of the fact of the crime." *State v. Mills*, 238 Kan. 189, Syl. ¶ 1, 707 P.2d 1079 (1985). The court further held:

"Threats, as this case demonstrates, are an effective way to keep child victims from reporting sexual offenses. They are commonplace in the aftermath of a sexual assault on a child. Therefore, the practical effect of construing a threat to a sexually abused child as concealment would be to extend the statute of limitations beyond its stated two-year period in nearly every case of this nature." *State v. Bentley*, 239 Kan. 334, 339, 721 P.2d 227 (1986).

In 1994, the Legislature added a tolling provision to account for victims that were too young or for other reasons were prevented from reporting their crime "whether or not the fact of the crime is concealed by the active act or conduct of the accused." K.S.A. 1994 Supp. 21-3106(6)(f). Some specific provisions of that law are at issue.

*We offer some observations on this statute.*

Except for murder, the Kansas Legislature has established a limited time for the State to prosecute a crime. There are many practical reasons for this policy. Evidence can be lost, memories of witnesses fade with the passage of time, and newly discovered evidence can cast doubt on the guilt of the accused or inversely, increase the proof of that guilt. The limitations statute creates an incentive to the State to be prompt, diligent, and thorough in its investigations. Foot dragging police are not rewarded with this statute of limitations.

The State here had a five-year period of time to prosecute. The controlling statute, K.S.A. 1998 Supp. 21-3106, speaks of this period available to the State to prosecute crimes. Ordinarily, the clock measuring that period starts ticking when the crime is committed and runs until the prosecution commences or until the statutory limit expires.

But sometimes that period to prosecute stops running under certain events and circumstances. Subsection (8) of the statute lists several circumstances that toll the expiration of the limit: "The period within which a prosecution must be commenced shall

8

not include any period in which . . ." and then sets out many events in the next six subsections of the statute. K.S.A. 1998 Supp. 21-3106(8). The question here is, did the clock stop running considering the circumstance of this case? The first five subsections of subsection (8) of K.S.A. 1998 Supp. 21-3106 provide a context that helps us interpret the pertinent subsection (f):

(a) In composing this statute, the Legislature is realistic and addresses what happens in the real world. Some accused will skip town and leave the state. When they step across the state line the clock stops and will not start again until they return to Kansas.

(b) Sometimes an accused hides somewhere in Kansas and avoids process. If so, the period for prosecution abates.

(c) There are crimes that are concealed. Once their existence emerges the clock starts to run but is tolled during the period the crime is concealed.

(d) The period does not run while a prosecution of the same conduct is pending against a defendant.

(e) While a state administrative agency is restrained by court order from investigating any criminal conduct, the period to prosecute stops.

But we focus in this appeal on crimes against children and they are the subject of subsection 8(f).

At the time of these crimes, the statute of limitations for rape and aggravated criminal sodomy was five years. K.S.A. 1998 Supp. 21-3106(4). In 2012, the Legislature amended the statute of limitations for sexually violent crimes so that if the victim was

9

under 18 years of age at the time of the offense, the time started to run when the victim turned 18 years old. K.S.A. 2012 Supp. 21-5107(f). In 2013, the Legislature amended the statute to allow a prosecution for rape and aggravated criminal sodomy to be brought at any time. K.S.A. 2013 Supp. 21-5107(a).

Here, unless tolled, the five-year statute of limitations began to run when the crimes were committed. K.S.A. 1998 Supp. 21-3106(4). The amendments could have extended the time for prosecution if the prosecution was not already time barred by the time the amendment came into effect. See *State v. Noah*, 246 Kan. 291, Syl. ¶ 5, 788 P.2d 257 (1990).

*The parties adopt opposing positions on the application of the limitation statute.*

The State argues the Legislature intended both K.S.A. 1998 Supp. 21-3106(8)(f)(i) and (ii) to be static factors. In other words, the relevant inquiry is whether the factors were true at the time the crime occurred. If they were true at the time of the crime, the statute of limitations is tolled until the victim turns 28 years old. The State argues the Legislature's use of the term "was" instead of "is" in the 21-3106(8)(f) factors designate static and fixed periods of time. The State contrasts the tolling provisions of 21-3106(8)(a)-(e) that use the term "is." The State claims "to say that the statute of limitations begins to run when the victim becomes able to determine the criminal nature of the conduct is to rewrite the statute." The State claims the statute cannot be read so that (8)(f)(i) is static while (8)(f)(ii) is dynamic.

The State argues the prosecution for the rape of M.H. was timely because M.H. turned 28 in 2015 and in 2013 the Legislature amended the statute of limitations for rape allowing prosecutions to be brought indefinitely. For the aggravated criminal sodomy prosecution, K.C. turned 28 in February 2022 after the State filed its charge.

10

Bolinger argues the trial court correctly found that at least two factors must be "'present'" during any period for which the statute of limitations would be tolled. Subsection (8)(f)(i) of 21-3106 is static because the statute says that "at the time of the crime." The Legislature chose not to include that language in subsection (8)(f)(ii). Bolinger also invokes the rule of lenity.

*We have unlimited review.*

Our opinion on this case is guided by well-established law. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. See *Betts*, 316 Kan. at 198. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should avoid reading something into the statute that is not readily found in its words. *Keys*, 315 Kan. at 698.

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Strong*, 317 Kan. 197, 203, 527 P.3d 548 (2023). Generally, criminal statutes are strictly construed in favor of the accused. This rule is subordinate to the rule that the interpretation of a statute must be reasonable and sensible to effect the legislative design and intent of the law. *State v. Griffin*, 312 Kan. 716, 720, 479 P.3d 937 (2021). The rule of lenity arises only when there is any reasonable doubt of the statute's meaning. *State v. Terrell*, 315 Kan. 68, 73, 504 P.3d 405 (2022).

*K.S.A. 1998 Supp. 21-3106(8)(f) tolls the statute of limitations only for a time period.*

In general, the tolling provisions listed in K.S.A. 1998 Supp. 21-3106(8) do not indefinitely extend the statute of limitations for prosecution. Rather, they provide that certain time periods are excluded from the count. When the statute of limitations contains an exception or condition that tolls its operation, courts deduct a specified period of time. See *State v. Palmer,* 248 Kan. 681, 683, 810 P.2d 734 (1991) (where a deduction was made for the period of time while the existence of the crime was concealed).

In order to understand and interpret this law it is important to read all of section (8):

"*(8) The period within which a prosecution must be commenced shall not include any period in which:*

"(a) The accused is absent from the state;

"(b) the accused is concealed within the state so that process cannot be served upon the accused;

"*(c) the fact of the crime is concealed;*

"(d) a prosecution is pending against the defendant for the same conduct, even if the indictment or information which commences the prosecution is quashed or the proceedings thereon are set aside, or are reversed on appeal;

"(e) an administrative agency is restrained by court order from investigating or otherwise proceeding on a matter before it as to any criminal conduct defined as a violation of any of the provisions of article 41 of chapter 25 and article 2 of chapter 46 of the Kansas Statutes Annotated which may be discovered as a result thereof regardless of who obtains the order of restraint; or

"*(f) whether or not the fact of the crime is concealed by the active act or conduct of the accused, there is substantially competent evidence to believe two or more of the following factors are present: (i) The victim was a child under 15 years of age at the time of the crime; (ii) the victim was of such age or intelligence that the victim was unable to determine that the acts constituted a crime;* (iii) the victim was prevented by a parent or other legal authority from making known to law enforcement authorities the fact of the

12

crime whether or not the parent or other legal authority is the accused; and (iv) there is substantially competent expert testimony indicating the victim psychologically repressed such witness' memory of the fact of the crime, and in the expert's professional opinion the recall of such memory is accurate and free of undue manipulation, and substantial corroborating evidence can be produced in support of the allegations contained in the complaint or information but in no event may a prosecution be commenced as provided in this section later than the date the victim turns 28 years of age. Corroborating evidence may include, but is not limited to, evidence the defendant committed similar acts against other persons or evidence of contemporaneous physical manifestations of the crime. 'Parent or other legal authority' shall include but not be limited to natural and stepparents, grandparents, aunts, uncles or siblings." (Emphases added.) K.S.A. 1998 Supp. 21-3106(8).

The disputed subsection (f) is contained within section (8) with all the other tolling provisions. The colon and list format of section (8) signify that the introductory language applies to each letter, (a)-(f). Section (8)(f) begins, "(8) The period within which a prosecution must be commenced shall not include any period in which: . . . (f) . . . there is substantially competent evidence to believe two or more of the following factors *are present*: . . . ." (Emphasis added). K.S.A. 1998 Supp. 21-3106(8). In other words, the statute of limitations is tolled only when two factors are present. The statute of limitations begins to run when two factors are no longer present. That much is clear from the plain language of the statute.

*K.S.A. 1998 Supp. 21-3106(8)(f)(ii) must be narrowly construed in favor of Bolinger.*

Statutes of limitations are construed liberally in favor of the accused. Exceptions to statutes of limitations are construed narrowly in favor of the accused. *State v. Belt*, 285 Kan. 949, 962, 179 P.3d 443 (2008). "[I]t is not the province of this court to fashion exceptions to the statute of limitations; that task is left to the legislature. Statutes of limitation are measures of public policy and are entirely subject to the will of the legislature." *State v. Bentley*, 239 Kan. 334, 339, 721 P.2d 227 (1986).

13

Two prior unpublished decisions of this court (not cited by the parties) mirror the trial court's interpretation of the statute here. In *State v. Weeks*, No. 117,475, 2018 WL 4517547, at *2 (Kan. App. 2018) (unpublished opinion), the panel explained the (f)(ii) exception: "Under that exception, the statute of limitations begins to run when the victim becomes able to determine the criminal nature of the conduct." It does not appear the State disputed that interpretation. Rather, the issue was whether the victim could not determine that the acts were criminal. 2018 WL 4517547, at *2.

In *State v. Torbol*, No. 117,474, 2018 WL 3596260, at *5 (Kan. App. 2018) (unpublished opinion), the (f)(ii) exception was also invoked to toll the statute of limitations and the panel similarly stated, "the statute of limitations began to run at the time [the victim] became aware of the criminal nature of Torbol's conduct." Again, it does not appear the State disputed that interpretation.

We look at the careful drafting of these two subsections. By using in subsection (f)(i) the phrase, "at the time of the crime," along with "[t]he victim was a child under 15 years of age," that factor will always be present if the facts support it. In other words that is one factor that will be considered in tolling the limitations period. Then, we note that in subsection (f)(ii) the statute uses the term "was" but does not include the phrase "at the time of the crime." That absence is significant. We do not embrace the State's use of the descriptive term "static" and choose to interpret the statutes as written and not add language to them in order to interpret them.

We presume the Legislature means what it says. The Legislature's failure to include the phrase "at the time of the crime" in subsection (f)(ii) must be read as intentional. The subsection must be construed in context of its placement with the other tolling provisions in the statute. And it must be read narrowly in Bolinger's favor.

When read in context with the introductory language to section (8), the Legislature's use of the term "was" in subsection (f)(ii) is not static. It reads, "(8) The period within which a prosecution must be commenced shall not include any period in which: . . . (f) . . . (ii) the victim was of such age or intelligence that the victim was unable to determine that the acts constituted a crime." Further, the introductory language in section (8)(f) is not static since it looks at whether "there is substantially competent evidence to believe two or more of the following factors *are* present . . . ." (Emphasis added.) Once the victim is no longer of such age or intelligence that he or she cannot determine the acts constituted a crime, that factor is no longer present and the clock starts to run. The trial court correctly interpreted the statute.

*The trial court did not misapply the statute of limitations to the circumstances of this case.*

The State contends the trial court misapplied its own interpretation of the statute to the charge related to K.C. The State posits that the trial court did not believe K.C.'s testimony and argues that the trial court should not have made such a credibility determination in deciding this issue. The trial court should have weighed the evidence in the light most favorable to the State; only a jury could make such a credibility determination. Without evidence of any other specific date that K.C. realized the conduct was a crime, the trial court should have given effect to K.C.'s testimony that it was when she was 27. K.C. was 19 years old in 2013 when the statute of limitations was extended indefinitely.

Bolinger argues the trial court did not need to apply the preliminary hearing standard and weigh the evidence in the light most favorable to the State or permit a jury to decide. Rather, K.S.A. 1998 Supp. 21-3106(8)(f) places the burden on the State to present substantial competent evidence to toll the statute of limitations. Bolinger agrees with the State that the trial court made a credibility determination. The trial court simply

15

did not believe K.C.'s testimony. The court was not required to speculate when K.C. likely realized the incident was a crime.

*The burden was on the State to present substantial competent evidence.*

Bolinger is correct that the State improperly invokes the preliminary hearing standard of review because the district court cited testimony from the preliminary hearing in deciding on the statute of limitations. The standard Bolinger cites only applies when the trial court is deciding whether there is sufficient evidence to bind over the defendant at a preliminary hearing. In such case, the State must only show probable cause. The trial court must draw inferences in favor of the State. Even if the evidence is weak, the defendant should be bound over for trial if the evidence tends to establish that the offense was committed and that the defendant committed it. *State v. Washington*, 293 Kan. 732, 734, 268 P.3d 475 (2012). The court does not pass on credibility and, when evidence conflicts, the court must accept the version of the testimony most favorable to the State. On appeal, we review the preliminary hearing court's probable cause determination de novo. *State v. Rozell*, 315 Kan. 295, 305, 508 P.3d 358 (2022).

In contrast, the statute of limitations is an affirmative defense that the defendant must plead. *State v. Gleason*, 315 Kan. 222, 226, 505 P.3d 753 (2022). Then the burden of proving facts sufficient to toll the statute of limitations is on the State. See *Slayden v. Sixta*, 250 Kan. 23, 26, 825 P.2d 119 (1992). The Legislature specified that the burden of proof for the (8)(f) exception to the statute of limitations is substantial competent evidence. Thus, the burden was on the State to prove by substantial competent evidence that the exception applied. K.S.A. 1998 Supp. 21-3106(8)(f); *Weeks*, 2018 WL 4517547, at *2. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. Appellate courts do not weigh witness credibility. We will not reject a trial court's adverse credibility determination on appeal unless the trial court arbitrarily disregarded undisputed evidence

16

or relied on some extrinsic consideration such as bias, passion, or prejudice. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

In general, uncontroverted testimony should not be disregarded by the trial court unless it is improbable, unreasonable, or untrustworthy. *Torbol*, 2018 WL 3596260, at *7. *Torbol* offers a helpful contrast to this case. There, the victim of aggravated criminal sodomy, F.P., was under the age of 15 at the time of the crime. F.P. testified she did not understand Torbol's conduct was illegal until she began watching crime shows in the fourth or fifth grade. The trial court ruled the statute of limitations began to run when F.P. gained that awareness, making the prosecution timely. On appeal, Torbol claimed the evidence failed to support the trial court's finding. This court affirmed the trial court, noting Torbol did not controvert F.P.'s testimony and that it was "neither improbable nor unreasonable that F.P. did not understand Torbol's conduct was criminal until she was in fourth or fifth grade." 2018 WL 3596260, at *5, 7.

Here, K.C. testified she discovered at age 27 that Bolinger's conduct was criminal. Unlike F.P.'s explanation that she understood Torbol's conduct was illegal when she began watching crime shows, K.C. could not explain how she finally made that realization. K.C.'s testimony that she repressed the memory contradicted her testimony that she would occasionally think about the incident. She stated she researched "the statutes," including the statute of limitations. She could not answer how her research led her to realize what Bolinger did to her was a crime. The parties agree that the trial court simply did not believe K.C.'s testimony. In essence, K.C.'s testimony was improbable and unreasonable. The trial court reviewed and made its decision based on the evidence. The district court's adverse credibility determination did not lack the support of substantial competent evidence, disregard undisputed evidence, rely on unreasonable inferences, or otherwise evince bias, passion, or prejudice. See *Smith*, 312 Kan. at 889.

17

*Statute of limitations disputes sometimes involve questions of fact for a jury.*

The State cites *Palmer* for its contention that the district court needed to let the State present evidence to a jury to prove its prosecution was timely. 248 Kan. at 699. *Palmer* supports the idea that a statute of limitations dispute can sometimes involve a question of fact for a jury. 248 Kan. at 690, 699. In *Palmer*, as here, the district court dismissed several charges as barred by the statute of limitations, and the State appealed. The Supreme Court reinstated the campaign finance act violation charges because the evidence showed that a defendant had "designed and executed a scheme calculated to prevent the discovery of his ties to the contributions." 248 Kan. at 698. The court held, "Under the facts presented, the question of concealment is a matter of fact for the jury to determine." 248 Kan. at 699.

But, *Palmer* does not hold that every statute of limitations dispute goes to a jury. The Supreme Court upheld the district court's decision that the charges of theft and conspiracy to commit theft were barred by the statute of limitations because "there was no evidence that the defendants concealed the alleged thefts or conspiracy to commit theft." 248 Kan. at 690. *Palmer* offers little guidance about when a statute of limitations question must go to a jury in a criminal case.

"Since statutes of limitations create a bar to prosecution, once a defendant has raised a statute of limitations defense, the prosecution generally must affirmatively prove the commission of the offense within the period limited by the statute." 29 Am. Jur. 2d, Evidence § 191. In general, "questions of law are for the court's determination and questions of fact are submitted to the jury." *Torbol*, 2018 WL 3596260, at *6. When the evidence is uncontroverted, whether the State presented sufficient evidence to allow tolling of the statute of limitations under the applicable statute is a question of law. *Torbol*, 2018 WL 3596260, at *6.

Our Supreme Court has affirmed a district court's dismissal of charges against a defendant due to the passage of the statute of limitations because the State did not offer sufficient evidence to explain the delay and because statutes of limitations are liberally construed in favor of the accused. *State v. Long*, 276 Kan. 297, 303-04, 75 P.3d 1217 (2003). Here, the trial court found K.C.'s testimony could not satisfy the State's burden as a matter of law. Given that statutes of limitations are liberally construed in favor of the accused, the dismissal was proper.

The State did not ask the trial court to put the statute of limitations question before a jury. Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Therefore, this court need not reach the issue.

*The trial court was not required to speculate about an appropriate age.*

Because the tolling provisions operate to pause the statute of limitations for a specified period of time, a lack of evidence in the record needed to establish that timeframe "precludes any reasoned application of the tolling provision." See *State v. Hinchsliff*, No. 103,608, 2011 WL 4031502, at *5 (Kan. App. 2011) (unpublished opinion). The statute of limitations will not be tolled based on mere "speculation and guess." See 2011 WL 4031502, at *5.

The trial court was not required to guess at what age K.C. became able to determine the act constituted a crime. The trial court was correct to grant the motion to dismiss because the State did not show the existence of two (8)(f) factors.

Affirmed.